■ In the Matter of the Estate of JOHN LAPENNA, Deceased. MARY LAPENNA, Appellant; JAMES LAPENNA et al., Respondents.— In a proceeding by petitioner, the decedent's widow, for the issuance to her of letters of administration, in which the respondent, decedent's brother James Lapenna, interposed an objection on the ground that the petitioner had abandoned the decedent, the petitioner appeals from a decree of the Surrogate's Court, Queens County, rendered February 28, 1961 upon the decision of the court after a nonjury trial, which adjudged that she abandoned the decedent and therefore was not a distributee entitled to share in his estate, and which dismissed her petition

(Surrogate's Ct. Act, § 118; Decedent Estate Law, § 87, subd. [d]). Decree reversed, on the law and the facts, with costs to petitioner, payable out of the estate, and proceeding remitted to the Surrogate's Court for the making of a decree dismissing said respondent's objection and granting the petition. Findings of fact which may be inconsistent herewith are reversed, and new findings are made as indicated herein. Petitioner and the decedent were married in 1932 and lived together until August, 1952, when she left their household. They were never reunited; there was no issue of the marriage; the decedent died in 1960. Since about a year before the separation, petitioner has been gainfully employed; she has supported herself since the separation without seeking support from the decedent. Respondent (James Lapenna, the decedent's brother) came to live with petitioner and the decedent less than a year before the separation, after said brother himself had become separated from his wife. Shortly before petitioner left the decedent a conference took place amongst them and her mother and her brother who is a priest. Evidence was adduced, without contradiction, that at such conference petitioner charged that she was not happy in her home; that the cause of such unhappiness was that ever since the decedent's said brother had come to live in her household the decedent was not treating her as he had theretofore; that the brother "wants to take over" and was critical of her cooking; that the decedent abstained from sexual relations with her; that he had men come to their home and play cards there; that the practice of "going to sleep at all hours of the night" prevented her from getting proper rest; that on one occasion the decedent called her a bum; that petitioner declared that the decedent had to choose between her and his brother; and that the decedent did not deny the truth of all these charges by petitioner, saying only that, if she would be happy with a separation, it would be best for her to live with her mother. With respect to his abstention from sexual relations, he said that he was "tired." He was then 50 years of age. Petitioner went to live with a lady friend. In her examination before trial she admitted that when she left she had no intention to return. The decedent had had diabetes for some time before the separation. Because of that disease he had had a toe removed about two years before the separation, and his eyesight began to fail about two or three years after the separation. In or about 1955 the wife of decedent's brother talked with petitioner about the prospect of her (petitioner's) going back to the decedent. There was disputed evidence that the brother's wife told petitioner that the decedent had asked her (the brother's wife) to ask petitioner to return, and that petitioner said she would not return. Since about the time of such conversation the said brother's wife became reunited with him and they lived with the decedent until the latter's death. Abandonment by a spouse is a voluntary departure or a living apart, without intention of returning, that is unjustified and without the consent of the other spouse, the separation being obstinate and hardened and one that would have supported a judgment of separation (*Matter of Maiden*, 284 N. Y. 429; *Mirizio* v. *Mirizio*, 248 N. Y. 175; *Bohmert* v. *Bohmert*, 241 N. Y. 446; *Matter of Mead*, 281 App. Div. 943; *Matter of Christesen*, 277 App. Div. 893; *Matter of Buczek*, 80 N. Y. S. 2d 254; *Matter of Weinberg*, 75 N. Y. S. 2d 138; *Matter of Casey*, 51 N. Y. S. 2d 55). Consent to a departure is a defense to a charge of abandonment even though the consent was given with reluctance (*Solomon* v. *Solomon*, 290 N. Y. 337, 342). Total and irrevocable negation of sexual relations with one's spouse "constitutes abandonment in the eyes of the law" unless the spouse who denies the same has "good legal cause" for the denial; and, in the face of such unjustified denial, the denied spouse is justified in leaving the denying spouse (*Diemer* v. *Diemer*, 8 N Y 2d 206, 210–211). Where another person lives in the household of a married couple and is guilty of

conduct that makes intolerable the wife's continuance to live in the household, and where the husband refuses to provide a home free of such condition, the wife is justified in leaving the household and the husband is guilty of constructive abandonment (*Bruch* v. *Bruch*, 271 App. Div. 885). In our opinion, the separation here was with the decedent's consent; it was justified by the conduct of his brother and by the decedent's treatment of petitioner, including his abstention from sexual relations with her. Hence, her departure did not constitute abandonment by petitioner but rather a constructive abandonment by the decedent. If it be assumed *arguendo* that proper evidence was adduced, through the testimony of the wife of decedent's brother, that the decedent extended an offer to petitioner to return to him, nevertheless, in the light of the fact that the decedent was the one who was guilty of the abandonment, the offer was of no avail; it came after the accrual of a cause of action by reason of *his* abandonment and it was not made within a reasonable time after such abandonment (*Bohmert* v. *Bohmert*, 241 N. Y. 446, 452–453, *supra*). Ughetta, Acting P. J., Christ, Brennan, Rabin and Hopkins, JJ., concur.