Robert P. Kennedy, J.
Plaintiff, here, seeks a divorce from defendant by default under subdivision (2) of section 170 of the Domestic Relations Law. The theory under which plaintiff seeks recovery presents a novel twist. The parties were married in 1954. In 1955 plaintiff was convicted of a crime and was in a State prison from either 1955 (according to his complaint) or 1959 (according to his testimony) until 1969. *216 While he was in prison he learned that defendant had left New York State. When he was released, he contacted her in California and attempted to get her to return to New York and resume their marital relations. Plaintiff testified that defendant said that she was living with a man by whom she had had two children and that she did not want to break it up.
That’s the factual basis for plaintiff’s claim that defendant abandoned him. He is gracious enough not to charge her with abandoning him in 1955 (1959) when he went off to prison, but claims the abandonment occurred in 1969 when he was released and refused his request for her to return when he found she was not at home waiting for him (Tie a Yellow Ribbon Around the Old Oak Tree).
It can be pointed out initially that defendant had grounds for divorcing plaintiff under subdivision (3) of section 170 of the Domestic Relations Law and this is so even though there were no such grounds for divorce in 1955 (1959) since plaintiff was in prison until 1969 (Egli v Egli, 56 Misc 2d 182). Secondly, defendant never did actually leave plaintiff. Plaintiff left her. We come, of course, to the issue as to who abandoned whom.
I have found no New York law dealing with the subject and the law in other jurisdictions is split as to whether or not a sentence to a term of imprisonment constitutes abandonment. The better view, in my opinion, is that expressed in Brady v Brady (98 NJ Super 600). In that case the husband was sent to prison and the wife brought the action, the reverse of our situation. The issue in Brady was whether the husband’s imprisonment constituted "willful and obstinate desertion in the sense of our Divorce Act”. The court held, in part, in granting the wife a divorce, "It follows, therefore, that the separation of spouses because of imprisonment for crime is essentially willful, albeit externally enforced.” (P 601.)
If this be a correct statement of the law as it applies in a situation where the nonprisoner partner seeks relief, it applies certainly in proceedings such as the one before this court.
It was, therefore, plaintiff’s voluntary and willful act which caused the separation of the parties here and which caused the separation to continue for either 10 or 14 years, nothing the defendant did. Plaintiff’s request to resume the marital relation upon his release from prison does not cure his aban *217 donment of defendant or give rise to a claim that defendant abandoned him at that time.
"If it be assumed arguendo that proper evidence was adduced, through the testimony of the wife of decedent’s brother, that the decedent extended an offer to petitioner to return to him, nevertheless, in the light of the fact that the decedent was the one who was guilty of the abandonment, the offer was of no avail; it came after the accrual of a cause of action by reason of his abandonment and it was not made within a reasonable time after such abandonment [citation omitted].” (Matter of Lapenna, 16 AD2d 655, 657; app dsmd 12 NY2d 671.)
To say that we are here dealing with a "dead marriage” is probably one of the great understatements of the day, but abandonment as a ground for divorce is a "fault” standard (Hessen v Hessen, 33 NY2d 406) and while plaintiff may well have "fault” grounds for divorce, they do not constitute abandonment.
Plaintiff’s demand for judgment of divorce pursuant to subdivision (2) of section 170 of the Domestic Relations Law is, therefore, denied.